Priority
Send
Enter
Closed
JS-5/JS-6 NO
JS-2/JS-3
Scan Only

*[Clerk stamps: FEB -8 2001, CLERK U.S. DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA, DEPUTY; ENTERED FEB -8 2001]*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTIANNE CARAFANO (aka CHASE MASTERSON), an Individual,<br><br>    Plaintiff,<br><br>    v.<br><br>METROSPLASH.COM, INC., a Delaware corporation, LYCOS, INC., a Delaware corporation, MATCHMAKER.COM, INC., a Texas Corporation, BRADLEY R. TYER, an Individual, and DOES 1 through 20, inclusive,<br><br>    Defendants. | Case No. 01-0018 CM (Cwx)<br><br>ORDER DENYING DEFENDANTS' MOTION TO DISMISS BROUGHT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)<br><br>THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(d). |

Presently before the Court is Defendants Metrosplash.com, Lycos Inc. and Matchmaker.com's Motion to Dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6). Having read the moving papers, the Opposition and the Reply, the Court hereby <u>denies</u> Defendants' Motion for the following reasons.[1]

I.

Factual and Procedural Background

On October 27, 2000, Plaintiff Christianne Carafano filed a

---

[1] Pursuant to Central District Local Rule 7.11, the Court hereby dispenses with oral argument.

*[Docketing checklist in left margin: Docketed, Copies/NTC Sent, JS-5/JS-6, JS-2/JS-3, CLSD]*

Complaint in Los Angeles Superior Court. On December 21, 2000, Defendant Bradley Tyer was dismissed creating complete diversity. Thus, on January 2, 2001, Defendants removed this case to the Central District. On January 9, Defendants filed their Motion to Dismiss, presently before the Court. The background facts are as follows.

Those who follow the voyages of the Starship Enterprise (and its various iterations) know Plaintiff Chase Masterson as Leeta, a recurring character on the now cancelled Deep Space Nine, or in Trekkie parlance DS9. More recently, however, Plaintiff has been unwittingly cast in an altogether different role. The Defendants in this case are Lycos, Inc.; Metrosplash.com; and Matchmaker.com, a wholly owned subsidiary of Lycos.

Matchmaker.com is a member only dating service that charges members for the privilege of posting profiles about themselves and to review other members' profiles. In order to create a profile, users fill out the Matchmaker user questionnaire and respond to Matchmaker essay questions. See Complaint at ¶ 18. A sample of the questions posed by the questionnaire are: "Try to describe the type of person you might be interested in meeting? and "Have you had, or would you consider having a homosexual experience." See Complaint at ¶ 18.

Plaintiff alleges that in November 1999, some unknown person went to the Matchmaker website and created a Chase Masterson profile ("Masterson Profile"). Included in the Masterson Profile were photographs of Plaintiff, her home address, a partial listing of her film credits, plus it stated Masterson lived alone with her child. See Complaint at ¶ 17. The Masterson Profile

also contained answers to the Matchmaker questionnaire. One of the answers stated Plaintiff "was extremely promiscuous and wanted to have sex with anyone who responded, male or female." See Complaint at ¶ 18. Finally, the Masterson Profile also contained an email address falsely identified as Plaintiff's. The phony email account was programmed to automatically reply to any sender with the following message: "You think you are the right one? Proof it!" See Complaint at ¶ 28. The automatic reply also contained Plaintiff's home address and telephone number.

Soon after the Masterson Profile was created Plaintiff received obscene and threatening phone calls, forcing Plaintiff and her son to relocate from their home. In addition, Plaintiff's assistant contacted Defendants requesting the Masterson Profile be removed. However, because Plaintiff had not posted the Profile, Defendants did not immediately remove the Masterson Profile, although it was eventually removed sometime in November. Although not part of the allegations, it is worth noting that it has been determined the Masterson Profile was created in a cybercafe in Berlin, Germany.

II.

Applicable Standard

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dept.,

3

901 F.2d 696, 699 (9th Cir. 1990). Moreover, "it is axiomatic that the Motion to Dismiss for failure to state a claim is viewed with disfavor and is rarely granted." Hall v. City of Santa Barbara, 813 F.2d 198, 201 (9th Cir. 1986).

The issue on a Motion to Dismiss for failure to state a claim is not whether the claimant will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims asserted. Gilligan v. Jamco Development Corp., 108 F.3d 246, 249 (9th Cir. 1997). When evaluating a Rule 12(b)(6) motion, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. Barron v. Reich, 13 F.3d 1370, 1374 (9th Cir. 1994). The court is not required, however, to accept conclusory legal allegations "cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994).

Rule 12(b)(6) must be read in conjunction with Rule 8(a) which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990). The notice pleading standard set forth in Rule 8 establishes "a powerful presumption against rejecting pleadings for failure to state a claim." Gilligan, 108 F.3d at 249 (citations omitted). Therefore, a court must not dismiss a complaint for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46

1  (1957); see also U.S. v. City of Redwood City, 640 F.2d 963, 966
2  (9th Cir. 1981).
3      Where plaintiff's complaint should be dismissed for failure
4  to state a claim, the plaintiff should be given "at least one
5  chance to amend the complaint" under Fed. R. Civ. Proc. 15(a)
6  before dismissing the action with prejudice. Bank v. Pitt, 928
7  F.2d 1108, 1112 (11th Cir. 1991). A plaintiff should be denied
8  leave to amend a complaint, if the court determines that
9  "allegations of other facts consistent with the challenged
10 pleading could not possibly cure the deficiency." Schreiber
11 Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th
12 Cir. 1986).

### III.

### Discussion

15     Defendants raise a number of arguments as to why Plaintiff's
16 Motion must be dismissed, which the Court discusses in turn.

17 **A. Communications Decency Act**

18     Defendants argue Plaintiff's Complaint must be dismissed
19 pursuant to the Communications Decency Act ("CDA"). In
20 particular, the relevant language of the CDA states:

> Treatment of publisher or speaker. No provider or user of
> an interactive computer service shall be treated as the
> publisher or speaker of any information provided by another
> information content provider...

25 47 U.S.C. § 230(c)(1). In construing this section, the Fourth
26 Circuit has stated that Section 230 "creates a federal immunity
27 to any cause of action that would make service providers liable
28 for information originating with a third-party user of the

5

service." Zeran v. America Online, Inc., 129 F.3d 327, 329 (4th Cir. 1997) cert. denied 524 U.S. 937 (1998); see also Ben Ezra, Weinstein & Co. v. America Online Inc., 206 F.3d 980, 984-85 (10th Cir. 2000).

The parties dispute whether Matchmaker falls within the definition of an "interactive computer service" which the CDA defines as:

> ... any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational systems.

47 U.S.C. § 230. Plaintiff argues in her Opposition that "the Matchmaker.com website does not provide Internet access but, instead, is an Internet destination, one among countless others." See Opp'n at p. 8. This is distinguishable, she argues, from an "interactive computer service," which is simply an "online service" which provides "a link" to Internet destinations. See Reno v. ACLU, 521 U.S. 844, 850 (1997).

Defendants argue, however, that the Matchmaker.com website permits members to go to the website and answer questions listed there. The answers are then posted as profiles, and stored on a computer server, and other members may then access the website and search the posted profiles. These functions, Defendants conclude, make the website an "information service, system . . . that provides or enables computer access by multiple users to a computer server." See 47 U.S.C. § 230(f)(emphasis added).

6

While Defendants' argument is certainly logical, <u>Zeran</u>'s reasoning demonstrates it is incorrect. <u>Zeran</u> states:

> One of the many means by which individuals access the Internet is through an <u>interactive computer service</u>. These services offer not only a connection to the Internet as a whole, but also allow their subscribers to access information communicated and stored only on each computer service's individual proprietary network. AOL is just such an <u>interactive computer service</u>.

<u>Zeran</u>, 129 F.3d at 328-29 (emphasis added).

Elsewhere, <u>Zeran</u> describes the purposes underlying Section 230: "Congress made a policy choice, however, not to deter harmful online speech through the separate route of imposing tort liability on companies that serve as intermediaries for other parties' potentially injurious messages." <u>Id.</u> at 330-31. In addition, <u>Zeran</u> refers to Prodigy and AOL as "interactive computer services." <u>Id.</u> at 331; <u>see also</u> <u>Ben Ezra</u>, 206 F.3d at 986 ("Congress clearly enacted § 230 to forbid the imposition of publisher liability on a service provider...)[2] <u>see also</u> Jonathan A. Friedman & Francis M. Buono, <u>Limiting Tort Liability for Online Third-Party Content Under Section 230 of the Communications Act</u>, 52 Fed. Comm. L.J. 647, 653 (2000).

Unlike Prodigy or AOL, Matchmaker is not Internet service

---

[2] Defendants also rely on <u>Blumenthal v. Drudge</u>, 992 F. Supp. 44 (D. D.C. 1998) which observed that Section 230's legislative history "makes clear" that it sought to overrule a New York State court decision which held "Prodigy, an Internet computer service like AOL" liable as a publisher of defamatory material. <u>Id.</u> at 52 n. 13 (citing <u>Stratton Oakmont, Inc. v. Prodigy Services Co.</u>, 1995 WL 323710 (N.Y. Sup. Ct. May 24, 1994).

provider that provides a means of accessing the Internet, rather it is a specific site, or destination. Accordingly, the Section 230 defense does not immunize Defendants from liability.

### B. Invasion of Privacy

Defendants argue Plaintiff has failed to state a claim for invasion of privacy by disclosure of private facts. The facts allegedly disclosed were Plaintiff's address and "living arrangement," namely, that she lived alone with her child. Defendants argue these are not "private facts" because their disclosure is not "offensive and objectionable to a reasonable person of ordinary sensibilities." See Sipple v. Chronicle Publishing Co., 154 Cal. App. 3d 1040, 1045-46 (1984). Defendants further argue (citing non-California cases) that disclosure of one's address has never been found to be an invasion of privacy.

This Court finds that disclosing Plaintiff's living arrangement and Plaintiff's address constitute tortious disclosure of private facts. Defendants argue that no liability arises solely because there is a "general public interest in nondisclosure." See Reply at p. 7. However, the Court believes Times Mirror Co. v. Superior Court, 198 Cal. App. 3d 1420 (1988) suggests otherwise. In that case, plaintiff came home and discovered her room-mate's "dead, nude body" on the floor and then "looked up to confront" the putative murderer. Id. at 1423. The Los Angeles Times covered the story and identified the plaintiff by name. Plaintiff brought a claim for invasion of privacy, and the Court of Appeals denied defendant's summary judgment, finding a trier of fact could have found that the interest in protecting witnesses and facilitating criminal

8

1  investigations outweighed defendant's First Amendment right to
2  publish plaintiff's name.
3      Similarly, the Court believes there is a strong interest in
4  not disclosing an actor's address and the fact that she lives
5  along with her child. Accordingly, the Court finds Plaintiff has
6  stated a claim for invasion of privacy by alleging the disclosure
7  of her address and living arrangement. Defendants' argument that
8  Plaintiff's address is "open for public view" and therefore not a
9  "private fact" is vitiated by Times Mirror, which permitted a
10 claim for invasion of privacy to proceed for the disclosure of
11 one's name, arguably the most public aspect of the persona.
12 Finally, in a footnote, Defendants cling on to the fact that
13 Carafano has made public that she is a single mom. However, the
14 Court believes this evidence is better presented through summary
15 judgment.
16     **C. Defamation**
17     Next, Defendants argue Plaintiff's defamation claim must be
18 dismissed. In particular, the First Amendment requires that as a
19 conduit of information, Matchmaker cannot be "responsible for a
20 defamatory statement that it repeats unless it knew or should
21 have known that the statement was false." See Motion at p. 13.
22 Defendants rely on Osmond v. EWAP, Inc., 153 Cal. App. 3d 842
23 (1984) and Lewis v. Time Inc., 83 F.R.D. 455 (E.D. Cal. 1979)
24 aff'd 710 F.2d 549 (9th Cir. 1983) which held that distributors
25 cannot be held liable for defamation unless they knew or should
26 have known that the statements in question were false. Because
27 Plaintiff does not allege Defendants knew or should have known
28 the Masterson Profile was false, they argue the defamation claim

9

must be dismissed.

The Court disagrees with Defendants. In short, the Court believes the "knew or should have known" rule which applies to "libraries, news vendors, or carriers" does not apply to Matchmaker which is an interactive site in part responsible for the content contained therein, and thus not merely a conduit of information. The extremely sexually provocative statements included in the Masterson Profile were answers to questions posed by the Matchmaker questionnaire. See Complaint at ¶ 18. Accordingly, the Court finds cases such as a distributor of another's product, or a businessmen of a newspaper published in a language he does not understand, are completely distinguishable. The Matchmaker questionnaire poses questions that could potentially elicit racy responses: "have you had, or would you consider having a homosexual experience" or "Describe your personality type? What type are you attracted to?"

The Court does not believe the heightened "knew or should have known" standard applies to Defendants. Accordingly, Defendants' Motion to Dismiss as to the defamation claim must be denied.

**D.  Right to Publicity**

Plaintiff brings a claim for violation of her right to publicity under the common law and section 3344 of the California Civil Code. As support for such claims, Plaintiff alleges Matchmaker improperly used photographs of her which "constituted an appropriation of Masterson's likeness under common law." See Complaint at ¶ 49. To correctly state a claim for common law appropriation of name and likeness, a plaintiff must plead "1)

10

the defendant's use of plaintiff's identity; 2) the appropriation of plaintiff's name or likeness to defendant's advantage, <u>commercially or otherwise</u>; 3) lack of consent; and 4) resulting injury." <u>Abdul-Jabbar v. General Motors Corp.</u>, 85 F.3d 407, 413-14 (9th Cir. 1996)(citation omitted)(emphasis added).

Defendants argue the right to publicity claim must be dismissed because "Carafano offers no facts that suggest that [] Defendants gained any commercial advantage from the Masterson Profile." <u>See</u> Reply at p. 9. Defendants further argue that "the mere existence of the Masterson Profile on the Matchmaker website is not a commercial use, however, and nowhere does Carafano allege that the photographs were used for advertising or promotion. This dooms her claim." <u>See</u> Motion at p. 10. As support, Defendants cite <u>Guglielmi v. Spelling-Goldberg Productions,</u> 25 Cal. 3d 860 (1979) and <u>Cher v. Forum Int'l, Ltd.</u>, 692 F.2d 634 (9th Cir. 1982).

Both <u>Guglielmi</u> and <u>Cher</u> are distinguishable, because in both cases the court placed heavy weight on the First Amendment interests at issue, namely, the creative work and the newsworthy interview. The <u>Guglielmi</u> court reasoned that "respondents did not surreptitiously film a performance by Valentino and incorporate that film in a motion picture. They did not appropriate 'an entire act for which the performer ordinarily gets paid,' thereby undercutting his ability to earn a living. [] Rather, respondents produced a fictional film about the legend of Valentino." <u>Guglielmi</u>, 25 Cal. 3d at 875.

Defendants argue that Plaintiff's claim must fail because they did not use her name to promote the site. However, the

11

common law claim does not require a knowing use, and mistake or inadvertence are not defenses. See e.g. Fairfield v. American Photocopy Equipment Co., 138 Cal. App. 2d 82, 87 (1955). If inadvertence is not a defense, "promotional use" of the name or likeness cannot be a prerequisite to bringing this claim. Although the facts presented here are somewhat dissimilar from previous cases, the Court still finds that Plaintiff has stated a common law right of publicity claim. Important to her case is the allegation that Masterson's membership would attract additional members. See Complaint at ¶ 49. Accordingly, Plaintiff has properly stated a common law claim for violation of her right of publicity.

Regarding the Section 3344 claim, in 1984, Section 3344 was amended to encompass any unauthorized use "on or in products, merchandise or goods." Cal. Civ. Code § 3344. Recently, the California Court of Appeals stressed that the amendment now "no longer requires that the unauthorized use occur in a product advertisement or endorsement or other such solicitation of purchase." KNB Enterprises v. Greg W. Matthews, 78 Cal. App. 4th 362, 367 n. 5 (2000). KNB further importuned that a "direct connection between the use and the commercial purpose" is no longer an element of Section 3344 claim. Accordingly, post-amendment cases (e.g. Abdul-Jabbar v. General Motors Corp.) stating the "direct connection" element is required, "must be read with caution." Id. Thus, to state a Section 3344 claim, a plaintiff must plead the common law elements plus "knowing use" but not "direct connection between the use and the commercial purpose." See Abdul-Jabbar, 85 F.3d at 414 but see KNB

12

1  Enterprises, 78 Cal. App. 4th 367 n5.
2       The Court finds Plaintiff has pled knowing use by
3  Defendants, because Defendants were requested to remove the
4  Masterson Profile, but allegedly did not do so for several days.
5  Accordingly, for some period of time, they were knowingly using
6  Plaintiff's name and likeness.  Defendants' Motion to dismiss
7  Plaintiff's Section 3344 claim is therefore denied.
8       **E.  False Light and Negligence**
9       Defendants argue the false light and negligence claims must
10 be dismissed because they duplicate the defamation claim which
11 they argue is subject to dismissal.  If a defamation claim fails
12 because of First Amendment concerns, a plaintiff cannot recover
13 on alternate theories.  See Unelko Corp. v. Rooney, 912 F.2d
14 1049, 1057-58 (9th Cir. 1990) cert. denied 499 U.S. 961 (1991).
15 Defendants' argument fails, however, because the Court has not
16 dismissed Plaintiff's claim for defamation.  Thus, Defendants'
17 Motion as to these claims is denied.
18                                IV.
19                             Conclusion
20      For all the above reasons, the Court denies Defendants'
21 Motion in its entirely.
22
23 IT IS ORDERED.
24 DATED: February 8, 2001

Carlos R. Moreno
United States District Judge