ORIGINAL

Gregory J. Aldisert (SBN 115334)
Caroline Heindel Burgos (SBN 190967)
GREENBERG GLUSKER FIELDS CLAMAN
MACHTINGER & KINSELLA LLP
1900 Avenue of the Stars, Suite 2100
Los Angeles, California 90067-4590
Telephone: (310) 553-3610
Fax: (310) 553-0687

Attorneys for Plaintiff Christianne
Carafano aka Chase Masterson

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| CHRISTIANNE CARAFANO (aka CHASE MASTERSON), an Individual,<br><br>Plaintiff,<br><br>v.<br><br>METROSPLASH.COM, INC., a Delaware corporation, et al.,<br><br>Defendants. | CV 01-00018 DT (CWx)<br><br>Assigned to Hon. Dickran Tevrizian<br><br>**DECLARATION OF CHRISTIANNE CARAFANO (aka CHASE MASTERSON) IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Date:    March 4, 2002<br>Time:   10:00 a.m.<br>Place:   Courtroom of the<br>           Hon. Dickran Tevrizian<br><br>Pre-Trial<br>   Conference: March 18, 2002<br>Trial Date:    April 30, 2002<br><br>[Other documents] |

ENTERED ON ICMS
FEB 19 2002

5495400002-1256972.1

DECLARATION OF CHRISTIANNE CARAFANO, etc.

I, Christianne Carafano (aka Chase Masterson), declare as follows:

1.  I am the plaintiff in the above-captioned matter. I make this declaration of my own personal knowledge, and if called as a witness, I could and would competently testify to all of the facts under oath.

2.  I am a working actress best known for a recurring role for five seasons on the television series *Star Trek: Deep Space Nine,* which ended in spring 1999. I have worked infrequently, however, since the false Matchmaker profile was posted about me in October/November, 1999.

3.  An unknown person posted a profile about me under the name "Chase529" (the "Profile") on Matchmaker's Internet dating service. Attached as Exhibit 1 is a true and correct copy of portions of the Profile that were downloaded. The Profile included personal details about me, including my home address and the fact that I live alone with my son. It included several photographs of me along with a partial listing of my film credits. It also had a litany of false statements about me, wrongly stating (among other things) that I was looking for a "hard and dominant" man with a "strong sexual appetite", that I like being "controlled by a man in and out of bed," that I contacted Matchmaker because I was "looking for a one-night stand," and that I "might be persuaded to have a homosexual experience." The Profile also included an e-mail address *cmla2000@yahoo.com.* This e-mail address contained an automatic response *"You think you are the right one? Proof it!!"* and included my home address and telephone number. This was a virtual invitation to commit sexual violence against me and made me extremely frightened.

4. I was never a member of Matchmaker. I never gave permission to Matchmaker or anyone else to use these photographs or to publish any information about me as part of any dating profile.

5. On approximately October 31, 1999, while out of the country, I checked my home voicemail and found two obscene telephone messages with disturbing music. After returning from a business trip on approximately November 4, 1999, I found on my home fax machine a horrible and vile letter that threatened me with sexual violence and threatened to "eliminate" my child. A true and correct copy of this letter is attached as Exhibit 2 (Depo. Exh. No. 12). The letter contained no sender identification, time or date.

6. I was terrified by the letter and by the fact that strangers had my home address, my telephone number and my fax number. The voicemail message on my telephone provided my fax number.

7. I also received a barrage of voicemail messages from men I did not know, stating they had seen my "listing" or "profile" on the Matchmaker website. I received calls even weeks after the Profile was removed from the website.

8. In addition to the death threat letter, I received other correspondence and e-mail from total strangers who expressed doubt as to the authenticity of the Profile but were nonetheless interested in sexual encounters with me. One person named M. K. Stratton with an e-mail address *"risque_rascal@hotmail.com"* wrote to me at my home address:

> "[I]t is probably unwise to post your street address or business phone number either at the Matchmaker site or on your auto-response. Do you really want the world to know where you can be found so easily? As I am sure you are well aware, the intentions of some on the Internet are not

> entirely honorable. You do realize that you are putting yourself in a position of some personal risk."

After this admirable admonition, he wrote:

> "You asked for some proof of my belief that I am the 'right one'. Such a statement would be disingenuous of me without some dialog. However, I can well say that I am possibly a 'right one' and think your consideration may reveal some mutual interests.
>
> My web page appears below. I invite you to take a look and write me if you would like to communicate further."

A true and correct copy of this letter is attached as Exhibit 3 (Depo. Exh. No. 23).

9. In another correspondence, a man named "Jeff" also propositioned me:

> "But I recently saw your pic[ture] and profile on Matchmaker. I e-mailed your direct e-mail with an auto response coming back with an address and phone number. If you respond to this, I will definitely call that number, cuz babe, you are damn hot!"

See Alger Decl., Exh. C.

10. A third person, Bradley Tyer, contacted me to inform me about the Profile. Although he also expressed concern for my well-being, our conversations led me to believe that he wanted to have a personal relationship with me as well. Given that at least three total strangers contacted me to express doubts about whether the Profile was legitimate, it clearly would have been easy for Matchmaker to determine that the Profile was false.

11. Because of the violation of my privacy and the threat to my safety and my son's safety, I contacted the Los Angeles Police Department the very next day (November 5, 1999) after I learned of the Profile. I was referred to the LAPD's Threat Management Unit and pleaded for them to determine who had posted the Profile and who sent the death threat letter, and to get the Profile removed from the

GREENBERG GLUSKER FIELDS CLAMAN MACHTINGER & KINSELLA LLP
1900 Avenue of the Stars, Suite 2100
Los Angeles, CA 90067-4590

1  website. The police responded that it would investigate the death threat letter, but
2  that the overall issue of the false profile was a civil, not a criminal, matter.

4      12.   I have taken extra precautions to protect the privacy of my home. For
5  example, I use my legal name "Christianne Carafano" rather than my stage name
6  "Chase Masterson" for all of my personal business. For example, all of my bills
7  have my legal name on them. Neither my home address nor my telephone number
8  is published. Although I occasionally invite friends, a few of which happen to be fan
9  club members, to my home, I am very careful about whom I invite because I am very
10 protective of my privacy. Previously, I had never had any problems with men
11 stalking me or invading my privacy.

13     13.   Because of the publication of the malicious Profile, I rarely spent the
14 night at my home for approximately the next six months. My son and I were forced
15 to stay with friends, family and at hotels. At some point, we eventually left the Los
16 Angeles area entirely.

18     14.   During this time, I was emotionally distraught. As an actress, my frame
19 of mind is an important factor in my ability to obtain work. I was too distraught to
20 audition for acting roles for several months after the Profile was posted, although I
21 did some Star Trek convention work. Shortly before the Profile appeared, my
22 relationship with one of my agents and personal manager had ended. After the
23 Profile, I did not attempt to retain new management until approximately one year
24 later. Finally, the added stress and disruption to my life as a result of the Profile
25 contributed to the downfall of my long-term relationship with my boyfriend, which
26 ended in December, 1999.

GREENBERG GLUSKER FIELDS CLAMAN
MACHTINGER & KINSELLA LLP
1900 Avenue of the Stars, Suite 2100
Los Angeles, CA 90067-4590

5495400002-1256972.1

4

DECLARATION OF CHRISTIANNE CARAFANO, etc.

15. I have lived alone with my 13-year-old son in the same house on a secluded street in Los Angeles for seven years as of the time these events transpired. To my knowledge, I have never disclosed in a public forum or media interviews that I live alone with my son. The reason is to protect our privacy and also for safety considerations. Although I have taken my son on two Star Trek cruises and a few Star Trek conventions, I generally do not take him to Star Trek conventions.

16. In this case, Matchmaker has emphasized that it requires members to follow terms and conditions which include a disclaimer that Matchmaker is not responsible for any member postings. However, because I was never a member of Matchmaker, I never agreed to any such terms and conditions. I believe that it is unfair for Matchmaker to attempt to insulate itself from liability where there is such an obvious risk of harm to non-members caused by its failure to take the few seconds necessary to screen the text before allowing profiles to be posted.

17. Although I had some measure of notoriety from *Deep Space Nine*, Matchmaker has overstated my level of celebrity in many respects. First, my fan club is not very large. Therefore, any corrective statement sent to my fan club members would be unlikely to reach those who saw or heard about the Profile. Second, my website *chasemasterson.com* receives substantially fewer than 200,000 hits per month. Third, I attend only some *Star Trek* conventions and do not give speeches or talks at each one that I do attend. My primary purpose for attending is to supplement my income and to raise money for charities; it is not to "raise [my] profile as a celebrity" as Matchmaker contends. I do attend some conventions without receiving a fee from the promoter, but I still earn money from autographs and donate portions of that money to charities. Fourth, whereas the biggest conventions may draw a few thousand people, many draw in the hundreds and some even less than one hundred.

5495400002-1256972.1

5

DECLARATION OF CHRISTIANNE CARAFANO, etc.

18. I did not issue any "corrective" statement in connection with the Profile for several reasons. First, I have no means to communicate with the Matchmaker members who viewed the Profile, so that posting a response on my website or in a fan club newsletter would not correct anything. Second, my home address (and telephone number) had already been disclosed. No response could possibly correct this problem. Third, I was concerned that any additional mention of the defamatory statements would do more harm than good.

19. Contrary to defendants' assertion, I did not respond to the Australian tabloid story (Exh. HH to Alger Decl.) about my purported suicide attempt, which was not true. Again, I was concerned about giving more credence to this false story that it otherwise would have. Nor did I ask anyone to do so. The author of the purportedly responsive e-mail (Exh. II to Alger Decl.) was Gayle Stever. Ms. Stever is an acquaintance with whom I occasionally fundraise. I did not ask Ms. Stever to respond on my behalf; she sent that e-mail of her own accord. To my knowledge, there was never anything posted on my personal or fan club website about the alleged incident.

20. In late summer 2000, the police informed me that Bradley Tyer, the man who had tried to help me, was in fact the likely creator of the profile. Subsequent investigation revealed that this information was incorrect.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on February 14, 2002 at Los Angeles, California.

CHRISTIANNE CARAFANO

DECLARATION OF CHRISTIANNE CARAFANO, etc.